Tatje vs. Frawley.

No. 13,030.

FREDERICK TATJE vs. JOHN J. FRAWLEY.

SYLLABUS.

52  884
f104 415

52  884
117  592

52  884
f124  778

Though a contractor, who had contracted with the city of New Orleans to cover with iron plates the open gutter running along the uptown sidewalk of Gravier street from Carondelet street to the edge of the bridge crossing that gutter from one side of Baronne street to the other, should have placed a

Tatje vs. Frawley.

red light at the edge of his only partially completed work at the corner of the streets, to show that there was still an open gutter space on the extension of the line of plates, he is not legally liable to an old resident of the city who falls into this open space when running at night along this line of plates with his eyes fixed upon a car approaching on Baronne street instead of looking out for the open gutter spaces, which, from his familiarity with the usual situation at the corners of intersecting streets, he should have expected to find, and must have anticipated finding there.

If he thought he was walking upon the sidewalk as argued, he must have expected to find either an open gutter directly in his path, and in front of him, or an open space somewhere upon his right.

Contributory negligence bars recovery.

A PPEAL from the Civil District Court, Parish of Orleans—*King J.*

*Theodore G. Spitzfaden* and *Armond E. Blackmar* for Plaintiff, Appellant.

*Bernard McCloskey* for Defendant, Appellee.

## STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J.  Plaintiff in this suit prayed for a judgment in his favor for five thousand dollars, against the defendant.

The demand was based upon the allegations that on June 18, 1894, defendant, Frawley, entered into a contract, with the city of New Orleans, for the rearrangement of the pavements on Gravier street, between Carondélet and Baronne streets, in said city; that under said contract, Frawley was to place iron covers over the gutters on said Gravier street, from Carondelet to Baronne streets, and also agreed to comply with all police and health regulations and ordinances, and especially as to placing all necessary lights, etc.; that on the 24th of September, 1894, Frawley had completed putting said iron covers on the gutter on the south side of Gravier street, except a small space of about three or four feet, between the edge of the iron covers, already laid, and the edge of Baronne street; that on said date, September 24, 1894, about half past ten o'clock P. M., petitioner reached the corner of Gravier and Carondelet streets, and walked out said Gravier street, towards Baronne street, on the iron covers, laid and placed by said Frawley,

under his said contract; that he continued his walk until near the open space, referred to above, and without knowledge, notice, or warning, that the said gutter head had not been properly covered, petitioner fell into said opening, striking his right leg violently, against the edge of the iron crossing, running over Baronne. street, causing a compound fracture of both bones; that said accident and injury were caused by the carelessness and negligence, of said Frawley, in leaving said opening, and failing to place proper lights, to warn and advise pedestrians, of the existence of said opening, and to disclose the dangerous condition of said sidewalk.

That, immediately after the accident, petitioner obtained medical and surgical attention; that he suffered intense pain, immediately on being hurt, and for weeks thereafter;—that the injury, which he had suffered, was painful and serious, and petitioner was advised, and believed, and feared, was permanent; that petitioner was before his injury, and was still engaged in the manufacture of cigars; that by reason of said injury, he had suffered great physical and mental pain, suffering, and anguish, and had been thereby damaged, to the extent of five thousand dollars; that by reason of said accident and injury, petitioner was unable to attend to his business for more than three months; that at the time of said accident, petitioner's business was on the verge of a prosperous season, and he had suffered in damages, from loss of business, and time, the further sum of five hundred dollars; that all of said damages, resulted directly, from defendant's negligence, and carelessness, as aforesaid.

Defendant answered.

After pleading the general issue, he answered, and admitted, that he had entered into, on June 18, 1894, a certain contract, with the city of New Orleans, for the rearrangement of the paving on Gravier street between Carondelet and Baronne streets, as would appear, from contract passed before J. D Taylor, Notary Public, June 18, 1894.

He averred, that if any damages at all resulted to plaintiff, the same were caused by the negligence of said plaintiff, and defendant in no manner contributed thereto.

Judgment having gone against plaintiff, he appealed.

## OPINION.

The evidence shows that about ten o'clock on the night of September 24, 1894, the plaintiff and a friend started to walk on Gravier

street trom Carondelet to Baronne street upon the sidewalk on the upper side of Gravier street.

Plaintiff's friend walked on the inside next the line of houses, and plaintiff on the side next the street.

Just as the parties reached the end of the last house on Gravier street, a car was seen approaching on its way up Baronne street which they desired to take to go to their respective homes. It was so near the corner when seen that plaintiff's companion suggested that they should run to stop it, and they both did so.

The former crossed safely over into Baronne street, but the plaintiff fell into an open space of about three or four feet between the edge of certain iron covers by which the gutters on Gravier street up to that point had been covered, and the edge of the crossing from the front or the river side of Baronne street to the rear or swamp side of that street.

He was severely injured by his fall. The iron plates which covered the Gravier street gutter from Carondelet to Baronne street, up to the point where the plaintiff fell, were placed there by defendant in execution of a contract between him and the city of New Orleans. Had an additional plate been placed upon the gutter, the space into which plaintiff fell would have been closed and no accident would have happened.

Defendant contends that the space into which plaintiff fell was nothing more than the open gutter which had always been there and in that condition, that it was no part of his contract to close it, and that even if it were, he was not called upon or required under the circumstances to place a red light at night on the sidewalk upon or near the plate next to the opening, he not having caused the open space to be there, just beyond his completed work.

The evidence shows, we think, that there was on the night in question no red light either at or near the open space, but if there was a red light or lamp burning, it was in the centre of Gravier street, itself, upon which work of some kind was then going on.

Plaintiff contends that defendant's contract called for the closing of the gap in the Gravier street gutter between where he had closed the gutter by plates and the edge of the crossing over from one side of Baronne street to the other, and that it was his duty, when in the execution of his contract, he reached (in covering the gutter) this point, and saw and knew that this space was open in the direct line of ex-

tension of the completed portion of his work, to have placed a red light or lamp at night upon the sidewalk at or near the open space, as was required to be done in the immediate vicinity of their work, in order to give warning of danger to passers by.

He contends that the closing of the open gutter from Carondelet street to Baronne by plates was a new work, changing the old condition of things, to which the people of the city had grown accustomed, one which tended directly to lead and lull passers along the sidewalk into a sense of full security, that the whole space which had been formerly open had been closed. That defendant was bound to know that this would be the result of leaving any portion of the gutter open, and the danger resulting from that fact should have been guarded against by danger warnings or signals.

Defendant meets this claim by insisting that plaintiff was bound to know from the usual condition of things upon the corners of streets in New Orleans, from time immemorial, he would find an open space between the foot crossings which extend from the sidewalks of the streets to the streets themselves, over the gutters running from the Mississippi river to the rear, and those running parallel to the river, as Baronne street does; that plaintiff was bound to expect to find such an open space somewhere, and if he thought proper, when approaching at night the spot where such an open space might be expected to be usually found, to start running and fix his eyes upon an approaching car instead of looking for the customary opening, he was guilty of contributory negligence which would bar his action. He contends that there was a city electric light burning at the corner of Baronne and Gravier, at the time of the accident, giving sufficient light whether flickering or not, to have shown plaintiff the open space before him, had he exercised usual care or judgment.

The contract between the city and defendant is in the record.

The defendant being upon the stand as a witness, himself, was cross-examined by the plaintiff's counsel as to whether or not he had before the day of the accident, done any work in and upon the portion of gutter between the point where the iron plates laid by him terminated, and the end of the bridge covering the gutter as it crossed Baronne street. The space here referred to was the open space into which plaintiff fell, and which defendant contended was not covered by his contract. This space was afterwards covered by defendant by

a plate, but he insisted that the contract under which this was done was a supplemental agreement made after the accident, under instructions from the City Engineer and to supply an omission on this very point under the original contract defendant had referred to it as extra work.

The following questions were asked and answers given:

"Q.—You did that extra work, did you, that you say was extra?

"A.—Yes, sir.

"Q.—Did you charge anything extra?

"A.—Yes, sir.

"Q.—Wasn't that because you were being paid by the pound for every plate you were laying there?

"A.—Well, perhaps it was.

"Q.—You did dig that gutter according to the plans and specification? You dug that gutter didn't you?

"A.—I suppose so.

"Q.—This particular place that was open, you did some digging there and concreted the bottom as provided in this (the original) contract, didn't you?

"A.—Maybe I did.

"Q.—Why did you think you were to do that part of the work and still deny that you were not required to cover it? Why did you think you were required to do the other part of the work and not required to cover it?

"A.—I don't know, unless it was not provided for by the Engineer by the amount of plates we ordered, and we ordered the plates on his estimate.

"Q.—You mean you had not ordered plates enough?

"A.—Oh, yes. He made the measurements and he ordered so many plates and we got the number that he specified.

"Q.—Well, the balance of the work as to this point where this man fell in, in so far as all this contract calls for, the digging of this gutter, the shaping of it, the filling of it in with concrete and all these things had been complied with by you at this point except putting the cover over it. Is that right?

"A.—No; my recollection of it is, that we had not complied with everything except the plates.

"Q.—You had complied with every thing except the plates?

"A.—No, sir; we had not.

Tatje vs. Frawley.

"Q.—You had not?

"A.—No; that is my recollection of it.

"Q.—Did you dig another gutter there, afterward? Did you alter or change anything there, after the man fell in?

"A.—Not that I recollect.

"Q.—You simply put the plate on it after you got it?

"A.—That is my recollection.

"Q.—At this point where he fell in, you don't mean to say you changed the gutter at all from what it was before?

"A.—Perhaps we did.

"Q.—Don't you know you had to do it to make it conform to this plan?

"A.—I don't know that we had. There might have been an offset that would avoid any change in the curbing. I suppose that is what you mean?

"Q.—Isn't the bottom of that gutter concrete?.

"A.—Yes, sir; I think.

"Q.—Didn't you concrete it at that spot?

"A.—I think we did.

"Q.—Don't you know you did?

"A.—It is four years ago and I could not recollect all these details. The foreman is here. He will give his evidence.

"Q.—There wasn't concrete before, at this point, was there?

"A.—No; there was an asphalt bottom or a concrete bottom.

"Q.—Didn't you put the concrete there?

"A.—I don't remember I did.

"Q.—You mean to say that you think that gutter bottom at the point where this man fell is not concreted to-day?

"A.—I don't say that it is not, I don't say any such thing."

Re-direct examination:

"Q.—Mr. Frawley, these cast iron plates, according to the contract, you were in doubt as to what you would use, whether it was cast iron or steel?

"A.—Yes, sir.

"Q.—And you were to be paid so much a pound for the quantity that the Engineer ordered?

"A.—Yes, sir.

"Q—And you put it down under his instruction?

"A.—Yes, sir.

Tatje vs. Frawley.

"Q.—Did you comply with the instruction of the Engineer under this contract in what he ordered you to get?

"A.—Yes, sir.

"Q.—Did you lay the plates down?

"A.—Yes, sir; we did.

"Q.—In other words you obeyed the instructions of the city of New Orleans about the quality and quantity of the plates?

"A.—Yes, sir.

"Q.—You obeyed their instructions to that effect?

"A.—Yes, sir."

We gather from the evidence that the portion of the gutter where plaintiff fell in was in fact included in the work to be done under defendant's contract, but that it remained in an incomplete state at the time of the accident, for the reason either that the City Engineer had made a mistake as to the number of plates required, and one or more new ones had to be sent for, or because matters were held in abeyance for the reason that the City Engineer had altered his mind as to the material and weight of the additional plate or plates under a reserved right to ultimately determine that matter, and his change of opinion had necessitated new orders and delay.

These facts would be very pertinent and relevant in determining whether the defendant was or was not in default for not completing the work or covering the space with the selected plate, but would have no bearing upon the question whether the walk itself was or was not included in the contract, whether the opening should have been temporarily closed by some other material or means, or whether a red light should have been placed at the edge of the completed work.

It has been held that the mere fact of a person's running upon a sidewalk is not *per se* evidence of negligence on his part and that all the circumstances existing at the time of his doing so, have to be examined. (71 N. W., 863.)

We have, therefore, in this case to take into consideration all facts having a legitimate bearing upon the question of plaintiff's having exercised or not exercised proper care and caution.

We have had several times before us actions wherein damages for injuries received upon sidewalks were claimed. Mahan vs. Everett, 50 Ann., 1167, and Shidet vs. Dreyfous Company, 50 Ann., 281, were cases of that character.

Tatje vs. Frawley.

The evidence shows that the plaintiff was not familiar with the condition of affairs at the corner of Baronne street and Gravier street, on the night of the accident, or the prior situation and condition of that particular corner.

As a general rule there is an open space to be found between the edge of the foot bridges extending over the gutters of the cross streets of New Orleans to the streets themselves, and the edge of the bridges covering the same gutters as they pass across the streets parallel to the river, and there is quite frequently an open space between the foot bridges crossing the gutters of the streets parallel to the river and the points where those gutters intersect the gutters running the length of the cross streets.

The improvements made upon the streets of the city in the last few years have changed this upon some but not upon many streets.

We have reached the conclusion in this case that though it might have been defendant's duty to have placed a red light at the end of the completed portion of the gutter covered by him, plaintiff was guilty of such want of care and caution, and contributory negligence in the premises as to bar his right of recovery.

He is shown to be an old resident of the city and must have known that he was likely to find and should have anticipated finding open gutter spaces in front of him at the intersection of Gravier and Baronne streets if he believed that he was walking upon the Gravier street sidewalk, and he should have governed himself accordingly.

It was an act of negligence upon his part to have started running at the particular place he did and to have fixed his eyes upon the approaching car, instead of using them to ascertain the situation at places where open gutters would probably be in his path.

For the reasons assigned it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby affirmed.

BLANCHARD, J., dissents.